Good morning, Your Honors. May it please the Court, Vivian Fu for Petitioner Appellant Laura Rivas. This is an appeal from the denial of a 2254 habeas petition governed by ADPA. This morning I'd like to focus on the first issue that was certified, which is whether the State Court unreasonably determined that the jury foreman, Rudy Medina, committed no misconduct and harbored no bias. The State Court found that while Medina did not reveal all the facts that he could have revealed on voir dire, he did not lie, and that he was justified in not disclosing the intimate nature of his relationship with Roy Rivas' mother. The State Court based this determination on the following findings, that most of the voir dire questions were oriented toward the work relationship, that Medina could have misunderstood the question, that Medina could have been led to believe that the intimate nature of the relationship was not important to his questioners, and that Medina could have believed that the romantic relationship was so old that it wasn't worth mentioning. The problem is that there's no evidence to support any of these findings. Medina never testified that he believed that the intimate nature of the relationship wasn't important to his questioners, or that the relationship was so old that he didn't think it was worth mentioning. He never testified as to how he misunderstood the questions, or that he believed that his questioners were only interested in the work relationship with the mother. He never gave any explanation for what he thought he was being asked, in light of the direct and clear questions concerning his social relationship with Rita. What was the question? As I recall, he brought it up, right? He did bring it up. Now, what was the question that he was responding to when he brought it up? The first question, one of the first questions asked by the court was, were there events in your life that caused you to know Rita and her family socially during that time? And his answer, not really. Next, he was asked by the court, any clear memory or recollection of meeting, speaking with, or having any relationship with any family members? And here he says, I knew Roy Rivas when he was a boy, but he doesn't reveal that he also met the sister, and he doesn't reveal the circumstances under which he met the kids, which is when they were being dropped off while he and his mother were, he and Roy Rivas' mother were dating. What's our standard to review, again? Whether this is the state court made an unreasonable determination of the facts. Yeah. In other words, we have to give AEDPA a review here, right? Yes. And what we have underlying this is this, as I understand it. Medina was the first one to come forward with any of this information. If he wanted to hide it, why would he mention it? This four-month relationship was 25 years ago, and Medina's surprise and testimony at the hearing support the district court's conclusion. So with that, now I'm to say that the highest court, highest state court, made an unreasonable application of Supreme Court precedent given those facts. Yes, Your Honor. That would be my answer. Well, why? I guess that's the problem. I get to that point, and then I say unreasonable application? What Supreme Court case says that is unreasonable? Well, we're operating under that the state court made an unreasonable determination of the facts, and it's true that Medina was the one that brought to the court's attention that he knew Rita, but I think the fact that he brought that to the court's attention and yet he didn't reveal the full nature of the relationship supports the finding that he was somehow maybe unconsciously conflicted about the relationship or was unconsciously biased. And he gave conflicting answers at the evidentiary hearing when asked why he didn't disclose his true relationship to Rita. He insisted repeatedly at least six times, this is from ER 562 to ER 577, that he actually had disclosed the true nature of the relationship. And then he said he didn't reveal the intimate nature of the relationship because he was never asked at ER 570. And then when confronted with the two instances where he was asked where the court said, you know, were there any events that caused you to know her socially, and also when defense counsel asked specifically a little bit later on, what was your relationship with her, he didn't have any explanation. And when he asked what he thought the court's question meant, he said, and this is ER 570, if during the time that I worked with her, a different relationship with her and her family socially. And, you know, it sounds like a pretty reasonable interpretation of the question, whether he had a social relationship with Rita. And then when he was asked, well, why didn't you reveal that you had this intimate relationship with her, and he could only say, this is at ER 571, I didn't believe that that was a question that I understood it at that time now that I read it several times. What was the interval of time between the time the board took place and the evidentiary? Two years. Approximately two years. Yes, the hearing was in 96, and the trial was in 94. I'm sure you made this great argument to the state court. They heard the same kind of stuff. And they looked at this, and they said, I have no Supreme Court precedent which tells me that I should make a decision as you would like me to make. Now I'm to say, again, under an AEDPA standard, that they're wrong. What Supreme Court case did I have to look at to help me make that decision? Well, the Supreme Court principle is that every defendant is entitled to an impartial jury. And this Court in Green v. White looked at, found that the juror in that case was impliedly biased because he had lied repeatedly during White v. Do I have to find a lie? I'm sorry? Do I have to find a lie? Well, I believe in this Court he did lie. I mean, I think it's pretty hard to characterize his relation, his statement. Isn't lying a question of fact? Isn't that a question which the superior court would be in a better position to make that determination than either appellate court would be? Well, our position is that the superior court's determination of fact is unreasonable based on Roy — I'm sorry, based on Medina's testimony at the evidentiary hearing, where he doesn't claim that he misunderstood the question or that he thought his questioners were only interested in the work relationship. So we have to go on the record that you say there's enough on the record, just objectively we could make that determination that it was unreasonable? Yes. Okay. Because you're going to run out of time, can I direct your attention to the potential procedural bar on the timeliness? Assuming, under Evans, that the petition wasn't pending, my understanding is that you would invoke equitable tolling. Is that correct? Yes. Was there any proffer made at any time as to what the basis for equitable tolling would be? Yes. In district court, Mr. Revis attempted to file a motion to expand the record, and I think there were maybe 70 or 80 pages of filings in support of timeliness, and the district court judge ultimately denied that motion because he had already considered the timeliness motion, and he wasn't going to reconsider it, so he denied the motion. So the district court never considered statutory or equitable tolling. So if this Court's inclined to look at that, we would request that it be remanded to the district court in the first instance. So you're saying there was, before the district court, factual statement? Yes. He made claims. I'm sorry. There were factual support to create a record for the district court to look at to determine whether there was equitable tolling? Yes, Your Honor. Okay. I'll stay the rest of my time. Okay. Thank you. Good morning. May it please the Court. Lisa Jacobson, Deputy Attorney General for the Respondent. First, in respect to the timeliness issue, the appellant actually submitted on two different occasions evidence in support of his claim of equitable tolling, and the district court did not make any findings on equitable tolling, so we would agree that a remand would be appropriate on that. In light of the Court's questions to opposing counsel on the juror misconduct claim, I'm willing to submit on the brief unless this Court has any questions for us, for me. You agree that it comes down to a question of whether it's an unreasonable interpretation of fact, right? Not just unreasonable determination of the facts. First, there was no unreasonable determination of the facts. The combination of the questions asked during voir dire, the first three of the four of which related to the work relationship, coupled with Juror Medina's testimony at the evidentiary hearing, which I think did include some indication that he was confused by the Court's question regarding whether there was any opportunity for social interaction with appellant's mother and the family, is set forth at 570 and 71 of the excerpts of record. And Juror Medina also testified he didn't reveal the relationship during the Court's questions because he was never asked about it. So I do think there is support for the State Court's findings that he answered the questions honestly, as he understood them. Let's suppose that it was obvious on the record that he ducked and that they ducked a question and that it would be hard for us to conclude that he wasn't dissembling. So under those circumstances, would your position be that there's any other EDPA barrier? Yes, sir. So we conclude that the State Court's determination was unreasonable finding of fact. Then what? Then, as the magistrate judge pointed out in his R&R, that still doesn't entitle you to relief because the settled Supreme Court precedent in this area, which is set forth in Smith v. Phillips, is that the remedy for an allegation of juror impartiality is a hearing in which the defendant has an opportunity to show actual bias. And the Superior Court held a two-day hearing. Six witnesses testified at the hearing, including appellant's mother and Juror Medina. And the State Court's made a finding after the hearing that there was no actual bias. And the record amply supports this. The relationship, which was 25 years before trial, it was a four- to six-month casual sexual relationship. Medina was separated from his wife at the time. He was also seeing other women. Both Medina and appellant's mother agreed that the relationship ended without acrimony. Medina indicated it had no lasting influence on him. He reconciled with his wife afterward. Appellant was six years old at the time of that fling, and Medina had little contact with his mother. Appellant relies on the doctrine of implied juror bias, but that has not clearly established Supreme Court precedent, so that doesn't provide a basis for relief under AEDPA. But even under the doctrine of implied juror bias, this case doesn't fit, because this Court recognized in Dyer, it's only the kind of dishonest answers that we can infer that there's some sort of impartiality from. Like in Dyer, the juror lied both about whether anyone in her family had been a crime victim, when her brother, who she was very close to, had been murdered about six years before trial, and she herself had been a victim. And she also lied about whether any members of her family were. Here, the relationship obviously wasn't of this sort of nature. So even to the extent that this Court were to somehow determine that the doctrine of implied juror bias has clearly established Supreme Court precedent, which this Court recognized in Fields, that the Supreme Court has never embraced or rejected the doctrine, appellant would still not be entitled to relief. So unless there's any additional questions, we'd ask this Court to adjourn. Thank you. Thank you. Just very quickly on the doctrine of implied bias. In Green v. White, and also more recently in Estrada v. Scribner, this Court did proceed on the doctrine of implied bias in an AEDPA case on juror bias. And so this Court has recognized that it has clearly established Supreme Court law. And five justices in McDonnell Power v. Greenwood agreed that the doctrine of implied bias exists. With respect to also Green v. White, in that case, the State Court found that the voir dire questions were vague and the events were so remote that the juror could be expected to forget about them. And this Court concluded that the State Court determination of facts was unreasonable because the juror had never testified that he forgot about his assault conviction or that he didn't understand the questions on voir dire, which were clear and direct. And we would submit that this case is comparable because there is no – Medina never testifies as to any of the points that the State Court relies on to support his decision that he wasn't lying. And it's not clear why he chose to be dishonest, but the important point is that he did more than once, and his behavior cast doubt on his claim that the relationship had no effect on him. This is someone who had an intimate relationship with the mother, saw Mr. Rivas and his sister several times a week when he was a boy. He's been a juror in six to eight prior trials. He knew exactly what he was supposed to reveal on voir dire. And as this Court noted in Dyer, such a juror lacks the indifference that is the hallmark of an unbiased juror. And his behavior brings the sort of unpredictable factor into the jury room that the doctrine of implied bias is meant to keep out. Thank you. Thank you. The matter just argued is submitted for decision.
judges: Schroeder, Fisher, Smith N. R.